IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL WAYNE PERRY, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:17-CV-528-Y |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Michael Wayne Perry, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. Factual and Procedural History**

On July 14, 2014, in the 297th Judicial District Court, Tarrant County, Texas, Case No. 1302260D, having refused the state's plea offer of 10 years' confinement, Petitioner entered an open plea of guilty to a jury to one count of robbery and true to the repeat-offender notice in the indictment. (Clerk's R. 54, 68, doc. 15-7.) On July 16, 2014, following his trial on punishment, the jury found him guilty of the offense and true to the repeat-

offender notice and assessed his punishment at 40 years' confinement. (Id.) His conviction was affirmed on appeal and his petition for discretionary review was refused by the Texas Court of Criminal Appeals. (Docket Sheet 1-2, doc. 15-2.) Petitioner also filed two relevant state habeas-corpus applications challenging his conviction, the first of which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court and the second of which was dismissed as a subsequent petition. (Action Taken, docs. 15-20 & 15-28.) This federal habeas petition followed.

During the trial on punishment, testimony reflected that N.S. left a Kroger store in Arlington, Texas, on the morning of October 14, 2012. As she approached her car, she observed a man, later identified as Petitioner, pacing near a tannish-colored car with the trunk open and the hazard lights on. N.S. loaded her groceries and returned the shopping cart. As she was returning to her car, Petitioner approached her, told her that his car had broken down, and asked if she had a cell phone. N.S., who became frightened, got into her car and as she was putting her purse on the passenger seat, Petitioner placed his arm across her neck, said "bitch, don't say anything," and took her purse. N.S. was able to give a description of the robber and the tannish-colored car and possible license plate number of the car to the police. Through a GPS locator on N.S.'s phone, Petitioner was located and detained at a

gas station, with N.S.'s belongings in his possession. N.S. positively identified Petitioner as her robber in a "field showup." The parties stipulated to evidence of Petitioner's lengthy criminal history, which included three prior felony-theft convictions. (Reporter's R., vol. 6, State's Ex. 16, doc. 15-18.) Petitioner did not testify or call any witnesses on his behalf.

## II. Issues

In three grounds for relief, Petitioner claims that (1) the trial court erred by overruling his trial counsel's objection to the state's closing argument inviting the jury to speculate as to "imaginary witness testimony"; (2) he was denied effective assistance of counsel by trial counsel's failure to pursue and present any mitigating evidence during trial; and (3) he was denied due process of law and his right to a fair trial under the Sixth Amendment by trial counsel's failure to "communicate all legal matters" to him before trial. (Pet. 6-7, doc. 1.)

## III. RULE 5 STATEMENT

Respondent believes that Petitioner has exhausted his state-court remedies as to grounds one and two but that the third ground is unexhausted but procedurally barred from federal review. She does not assert that the petition is barred by the statute of limitations or subject to the successive-petition bar. (Resp't's Answer 5, doc. 13.)

3

## IV. LEGAL STANDARD FOR GRANTING HABEAS-CORPUS RELIEF

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). See 28 U.S.C. § 2254. Under the AEDPA, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *See* 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. *Valdez v. Cockrell,* 274 F.3d 941, 948 n. 11 (5th Cir. 2001). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Additionally, when the Texas Court of Criminal Appeals, the

4

state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018).

**V. Discussion**

**A. Procedural Default and Exhaustion**

Under his first ground, Petitioner claims that he was denied due process as a result of the trial court's overruling of his counsel's objection to the state's closing argument inviting the jury to speculate as to "imaginary witness testimony." (Pet. 6, doc. 1.) Respondent asserts that this claim was forfeited in state court because no contemporaneous objection was raised at trial, and, thus, the claim is procedurally barred from federal habeas review. (Resp't's Answer 9-11, doc. 13.) Under the procedural-default doctrine, a federal habeas court will not review a claim if the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and

5

adequate state procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Amos v. Scott,* 61 F.3d 333, 338 (5th Cir. 1995).

In overruling the claim on appeal, the state appellate court, replying solely on state law, provided:

> [Petitioner] argues that the trial court committed reversible error by overruling his objection to the State's closing argument, "which invited the jurors to speculate as to imaginary witnesses that the defense might have, but failed, to call to testify regarding his character when no evidence was presented by either the [S]tate or defense that the witnesses actually existed or could have been called." Generally, in order to preserve a complaint related to jury argument error, the complaining party must make timely and specific objection to the jury argument.
>
> At trial, the following exchange occurred:
>
> [STATE]: This has been a very short trial. We've got some pictures, we've got testimony. But you've seen the photo album that we brought to you. And I told you in jury selection guilt and innocence--or rather punishment phase of a trial is an opportunity for both sides to bring you anything they want. Have you heard anything good about this defendant?
>
> [DEFENSE]: Your Honor, we will object to that argument. It's a comment on the defendant's election not to testify.
>
> THE COURT: I'm going to overrule that particular objection.
>
> [STATE]: Have you heard from an employer saying he's ever worked an honest day in his life? Fellow

> church member to say he's a
> good person? Anybody? If
> anybody came to you and said
> you've got a week, you need to
> come up with some people to
> come up with something good to
> say about you, could you come
> up with one?

> Although [Petitioner]'s trial objection was that the
> argument was a comment on his election not to testify, on
> appeal he contends that the prosecutor's argument was
> outside the record and encouraged the jury to speculate.
> It is well established that, in order to preserve a
> complaint for appellate review, the objection at trial
> must comport with the complaint raised on appeal. In the
> case now before this court, we cannot conclude that the
> trial objection that the argument is a comment on
> [Petitioner]'s decision not to testify comports with the
> complaint on appeal that the argument is outside the
> record and encourages the jury to speculate.

(Mem. Op. 2-3, doc. 15-3 (citations omitted).)

Clearly, the state court's decision rested on a state-law procedural default independent of Petitioner's claim. And, Texas's contemporaneous-objection rule is an adequate state procedural bar to federal habeas review. *See Amos v. Scott,* 61 F.3d 333, 341 (5th Cir. 1995). Thus, the procedural default in state court precludes federal habeas review of the claim. *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Ogan v. Cockrell,* 297 F.3d 349, 356 (5th Cir. 2002).

A petitioner may overcome a state procedural bar by demonstrating either cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice--*i.e.,* that he is actually innocent of the

offense for which he was convicted. *Coleman,* 501 U.S. at 750.

In an effort to overcome the procedural default, Petitioner argues that the state court's determination is contrary to clearly established federal law as determined by the United States Supreme Court or resulted in a decision that is based on an unreasonable determination fo the facts in light of the evidence presented at trial; that counsel made a timely and specific objection in compliance with Texas Rule of Appellate Procedure 33.1(a)(1); and that this Court's failure to consider the claim on the merits will result in a fundamental miscarriage of justice. (Pet'r's Reply 5-6, doc. 20.) The Court, however, finds no legal authority or factual support in the record for Petitioner's first argument. And, a state court's use of procedural bars is entitled to federal deference if strictly or regularly followed, as is the bar in this case. *See Hathorn v. Lovorn,* 457 U.S. 255, 263 (1982). Finally, a petitioner seeking to invoke the actual-innocence exception to the procedural-default rule must produce new reliable evidence that was not presented at trial and must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of the new evidence. *See House v. Bell,* 547 U.S. 518, 537 (2006); *Schlup v. Delo,* 513 U.S. 298, 324, 327 (1995). Petitioner presents no such evidence. Accordingly, Petitioner's first claim is procedurally barred from this Court's review.

Under his third ground, Petitioner claims that he was denied his Sixth Amendment right to a fair trial because counsel failed to "communicate all legal matters [a 10-year plea offer and its date of expiration] prior to the most critical stage of the trial, 'pre-trial'" and forced him into a trial. (Id. at 7; Pet'r's Reply 9-12, doc. 20.) Respondent asserts that Petitioner raises this claim for the first time in this federal petition and that the claim is unexhausted and procedurally barred from federal habeas review under the Texas abuse-of-the-writ doctrine.

Petitioners seeking habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-48 (1999); *Fisher,* 169 F.3d at 302; *Carter v. Estelle,* 677 F.2d 427, 443 (5th Cir. 1982). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier,* 762 F.2d 429, 431-32 (5th Cir. 1985). Therefore, a Texas prisoner may satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state habeas-corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal

Procedure in a procedurally proper manner. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *Depuy v. Butler,* 837 F.2d 699, 702 (5th Cir. 1988).

While it is true that Petitioner did not specifically raise a Sixth Amendment right-to-a-fair-trial claim based on counsel's failure to "communicate all legal matters" before trial in state court, the Amendment requires effective assistance of counsel at critical stages of a criminal proceeding, including pretrial stages "in which defendants cannot be presumed to make critical decisions without counsel's advice." *See Lefler v. Cooper,* 566 U.S. 156, 165 (2012) (holding that defendant's Sixth Amendment right to effective counsel was violated where counsel failed to alert client that a plea offer had been extended and client was subsequently convicted at trial and sentenced and "received a sentence harsher than that offered in the rejected plea bargain"). Thus, Petitioner's Sixth Amendment claim is consistent with the right to effective assistance of counsel during pretrial proceedings. Because Petitioner raised a substantively equivalent claim in the context of an ineffective-assistance-of-counsel claim in his state habeas application, the Court believes that the instant claim was sufficiently exhausted in state court and addresses it below.

**B. Effective Assistance of Counsel**

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI,

XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The Supreme Court set out in *Richter* the manner in which a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (emphasis in original) (quoting *Williams v. Taylor*,

529 U.S. 362, 410 (2000)). Accordingly, it is necessary only to determine whether the state courts' rejection of Petitioner's ineffective-assistance claims was contrary to or an objectively unreasonable application of *Strickland*. *Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

Under his second and third grounds, Petitioner claims his trial counsel, Charles Roach, was ineffective by failing to investigate and present character witnesses in mitigation of punishment and, as noted, to "communicate all legal matters [a 10-year plea offer and the date it expired]" to him before trial, thereby forcing him into a trial. (Pet. 6-7, doc. 1.)

In an affidavit filed in the state habeas proceedings, counsel responded to the allegations as follows:

> 1. All matters of the case and trial were discussed with [Petitioner] on <u>numerous</u> occasions.
>
> 2. Petitioner was advised he could present evidence at both phases of the trial.
>
> 3. [Petitioner] did not wish to call any witnesses.
>
> 4. There were no witness[es] to interview prior to the punishment phase.
>
> 5. [Petitioner] did not wish to testify at either phase nor had any witnesses.
>
> 6. [Petitioner] did not wish to call anyone.
>
> 7. There were no additional witnesses to call.

(WR-85,640-01 Writ Rec'd 50, doc. 15-27 (emphasis in original).)

In a separate affidavit, counsel also responded to Petitioner's allegations as follows:

> I was appointed to represent [Petitioner], Michael Perry on two charges. One was Robbery and the other was Credit Card Abuse. The Allegations were that [Petitioner] robbed a woman of her purse when she exited a grocery store and that he used one of her credit cards about an hour later to purchase gas. [Petitioner] was arrested at the gas station while using the stolen credit card and the stolen purse was recovered from the trunk of his car.
>
> [Petitioner] was a repeat offender. We had complete discovery of the State's file. These cases were set on the Court's docket several times and I had numerous conversations with [Petitioner] and with the prosecutor. Plea bargain offers were made and communicated to [Petitioner]. The final offer just prior to trial was for a 10 year sentence on the robbery case. This offer was rejected by [Petitioner]. He was wanting to plead guilty to the Credit Card case only for the 10 year sentence. The prosecutor would not agree to do that. A trial was held and the victim identified [Petitioner] as the robber. [Petitioner] was sentenced to 40 years.
>
> Discovery was complete in these cases. Plea negotiations were numerous. Communications with [Petitioner] were numerous and he was completely aware of the progression of his cases through the system. He wanted a deal the prosecutor was unwilling to make. In the end, [Petitioner]'s decision making cost him 30 additional years of prison time.

(Id. at 42.)

Based on counsel's affidavit, the reporter's record of the trial-court proceedings, and the documentary record, the state habeas judge entered the following relevant factual findings, which were adopted by the Texas Court of Criminal Appeals (any grammatical and/or punctuation errors are in the original):

> 7. Hon. Roach had numerous conversations with [Petitioner].

13

8. Hon. Roach had numerous conversations with the prosecutor.

9. Hon. Roach kept [Petitioner] informed regarding the progression of his case through the system.

10. Hon. Roach discussed all matters of the case and trial with [Petitioner] on numerous occasions.

11. Hon. Roach attempted to negotiate a plea deal that was acceptable to [Petitioner] but the State was unwilling to make the offer [Petitioner] wanted.

12. The Honorable Everett Young presided over [Petitioner]'s pretrial and trial proceedings.

13. [Petitioner] was advised by the Honorable Young that this case was set for a jury trial during the week of July 14, 2014.

14. On July 1, 2014, the State advised [Petitioner] that the ten year plea offer would expire that day.

15. On July 1, 2014, the State advised [Petitioner] that, if [he] did not take the ten year plea offer, the State would no longer make an offer and [Petitioner] would be forced to go to trial.

16. Hon. Roach advised [Petitioner] that that ten year plea offer was the final offer before trial.

17. On July 14, 2014, [Petitioner] told the trial court that he did not "understand, sir, that that was [his] last offer [before trial.]"

18. [Petitioner]'s claims at trial that he did not understand there would be no further offers from the State were not credible.

19. On July 14, 2014, [Petitioner] told the trial court that he didn't know he was going to trial that day.

20. [Petitioner]'s claims at trial that he did not understand that he was going to trial on July 14, 2014, were not credible.

. . .

14

23. The facts of this case are as follows:

    - On October 14, 2012, [Petitioner] approached the victim at a Kroger parking lot;
    - [Petitioner] approached the victim and asked for help as his car had broken down;
    - When the victim declined to help [Petitioner], [Petitioner] pushed his way into her car, forcefully held her down in her driver's seat, and grabbed her purse;
    - [Petitioner] threatened the victim not to say anything;
    - The victim watched as [Petitioner] threw her purse into his trunk;
    - The victim wrote down [Petitioner]'s license plate number as [Petitioner] drove away in the vehicle he said was disabled;
    - The victim recalled the color, make, and model of the vehicle;
    - The victim activated the tracking device in her phone that was in her purse;
    - The victim called 911 and described [Petitioner]'s physical appearance, including the color and type of clothing he was wearing;
    - The victim tracked [Petitioner] to a QT gas station;
    - Law enforcement found [Petitioner] at the QT gas station using the victim's credit card;
    - [Petitioner]'s vehicle and vehicle's license plate number matched the victim's description;
    - The victim identified [Petitioner] as the person who attacked her; and
    - The victim's purse was found in [Petitioner]'s trunk.

24. The evidence against [Petitioner] was overwhelming.

25. In exchange for [Petitioner]'s open plea of guilty, the minimum punishment required lowered from twenty-five years to five years because the State waived one of the prior felony conviction enhancements.

15

26. Hon. Roach's advice to plead guilty in exchange for the State's waiver of one of the prior felony convictions was the result of reasonable trial strategy.

   . . .

29. [Petitioner]'s claim that counsel failed to adequately communicate with him is without merit.

30. [Petitioner] did not want to testify in this case.

31. [Petitioner] attaches affidavits from his mother, his pastor, a leasing specialist from [Petitioner]'s apartment complex, and a longtime friend stating that they would have all testified favorably on [Petitioner]'s behalf.

32. Hon. Roach spoke to [Petitioner]'s mother during the punishment hearing.

33. Hon. Roach did not call any witnesses to testify on [Petitioner]'s behalf because [Petitioner] decided he did not want to call anyone.

34. Hon. Roach's decision to not call witnesses to testify at the punishment hearing because [Petitioner] did not want to call any witnesses was the result of reasonable trial strategy.

35. [Petitioner] does not allege what other mitigation evidence counsel should have presented during the punishment hearing.

   . . .

43. [Petitioner] chose not to call any witnesses to testify.

44. Counsel's decision to not present any mitigating evidence because [Petitioner] did not wish to present any evidence was the result of reasonable trial strategy.

45. Hon. Roach's affidavit is credible and supported by the record.

46. There is no evidence that a reasonable likelihood

exists that the outcome of the trial would have been different but for the alleged misconduct.

(Id. at 53-55, doc. 15-27(citations to the record omitted).)

Applying the *Strickland* standard to those findings, and considering the totality of counsel's representation, the state habeas court entered the following legal conclusions:

> 7. [Petitioner] has failed to prove that counsel failed to conduct an adequate pretrial investigation in this case.
>
> 8. [Petitioner] has failed to prove that counsel failed to uncover facts relevant to the merits of the case.
>
> 9. [Petitioner] has failed to prove that counsel failed to adequately communicate with him.
>
> 10. Counsel's advice to plead guilty was the result of reasonable trial strategy.
>
> . . .
>
> 18. Counsel's decision to not present any witnesses because [Petitioner] did not want to was the result of reasonable trial strategy.
>
> 19. [Petitioner] has failed to prove that counsel's representation was deficient because he did not present any mitigation evidence on [Petitioner]'s behalf.
>
> 20. [Petitioner] has failed to prove that his attorney's representation fell below an objective standard of reasonableness.
>
> 21. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct sufficient to undermine confidence in the outcome is not established.
>
> 22. "[A] court need not determine whether counsel's performance was deficient before examining the

prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

23. [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel conducted more pretrial investigation.

24. [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel communicated with [Petitioner] more.

25. [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel represented [Petitioner] differently.

26. [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel presented mitigation evidence on [Petitioner]'s behalf.

27. [Petitioner] has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of the proceeding would have been different.

28. [Petitioner] has failed to prove that he received ineffective assistance of trial counsel.

(Id. at 58-61 (citations omitted).)

A state court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are "virtually unreviewable" by a federal court. *Moore v. Johnson,* 194 F.3d 586, 605 (5th Cir. 1999) (citing *Marshall v. Lonherger,* 459 U.S. 422, 432 (1983)). It is clear that

the state habeas court found counsel's affidavit credible and those presented by Petitioner, including his own, incredible. This Court may not reevaluate the conflicting affidavits or the credibility of the affiants. Thus, applying the appropriate deference to the state courts' factual findings and credibility determinations, and having independently reviewed Petitioner's claims in conjunction with the state court records, it does not appear that the state courts' application of *Strickland* was objectively unreasonable.

## VI. Conclusion

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). When a district court denies habeas relief by rejecting constitutional claims on procedural grounds without reaching the

merits, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack,* 529 U.S. at 484). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of his second and third claims or its procedural ruling as to his first claim. Therefore, a certificate of appealability should not issue.

SIGNED May 31, 2018.

                                         TERRY R. MEANS
                                         UNITED STATES DISTRICT JUDGE